109 F.3d 602
 1997-1 Trade Cases P 71,755, 97 Cal. Daily
Op. Serv. 2082,
97 Daily Journal D.A.R. 3864
In re COORDINATED PRETRIAL PROCEEDINGS IN PETROLEUM PRODUCTS
ANTITRUST LITIGATION.
STATE OF FLORIDA, ex rel. Robert A. BUTTERWORTH, Attorney
General,*
Plaintiff-Appellee-Cross-Appellant,
v.
EXXON CORPORATION, Defendant,
and
Stephen L. Dunne, Appellant-Cross-Appellee.
In re COORDINATED PRETRIAL PROCEEDINGS IN PETROLEUM PRODUCTS
ANTITRUST LITIGATION.
Stephen L. DUNNE, Appellant,
v.
STATE OF CALIFORNIA; State of Arizona; State of Oregon;
State of Washington, Plaintiffs-Appellees,
and
Exxon Corporation, Defendant.
 Nos. 93-56675, 93-56676, 94-56695.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Sept. 12, 1995.
Decided March 24, 1997.
 
 Patricia A. Conners, Assistant Attorney General, Tallahassee, Florida, for the State of Florida, plaintiff-appellee-cross-appellant.
 Stephanie L. Striffler, Assistant Attorney General, Salem, Oregon, for the States of Arizona, California, Oregon, and Washington, appellees.
 Mary G. Swift, Hackett & Associates, New Orleans, Louisiana, for Stephen L. Dunne, appellant-cross-appellee.
 Appeals from the United States District Court for the Central District of California, A. Wallace Tashima, District Judge, Presiding. D.C. Nos. CV-76-02839-AWT, CV-76-02840-AWT.
 Before: T.G. NELSON and KLEINFELD, Circuit Judges, and LEGGE, District Judge.**
 KLEINFELD, Circuit Judge:
 
 
 1
 These two appeals raise a number of questions regarding attorneys' fees in two common fund cases.
 
 FACTS
 
 2
 Dunne began practicing law in 1970 as an Assistant United States Attorney in the Eastern District of Louisiana. He worked there on some antitrust cases for the United States Department of Justice in 1971. Then he transferred to the Department of Justice antitrust division in Washington, D.C., and worked there for a year and a half. In 1974, Dunne became chief counsel of the antitrust division of the Attorney General's Office in the State of Oregon. He left that position in 1979, and commenced a law practice from an address in California.
 
 
 3
 In 1973, before any association with Dunne, Florida sued seventeen oil companies for antitrust violations in the United States District Court for the Northern District of Florida. Six years later, in 1979, Florida retained Dunne, then in private practice in California, to assist in this ongoing litigation. As amended, the contract provided for a 15% contingent fee, with $40 per hour guaranteed whether anything was recovered or not. The hourly rate was to be credited against any contingent fee which might ultimately be paid. If a judgment was obtained against the oil companies, then Dunne promised either to seek a judicial award of attorneys' fees and credit whatever was obtained against the contractual fee, or else to accept the judicial award in lieu of his contractual fee.
 
 
 4
 Meanwhile, several western states were suing the same oil companies on the same theories. While Dunne had been an Assistant Attorney General in Oregon in 1977, he had filed one of the cases that became the consolidated western states' cases. The western states lost their case on summary judgment in the district court, in November 1986. See In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, 656 F.Supp. 1296 (C.D.Cal.1986).
 
 
 5
 Florida had already settled with some of the defendants in its case. Shortly after the summary judgment in the western states' cases it settled with the rest. The settlements produced a common fund of $5,120,000 for the people of Florida.
 
 
 6
 Subsequently, we reversed the summary judgment in the western states' case. In re Coordinated Pretrial Proceedings in Petroleum Products Antitrust Litigation, 906 F.2d 432 (9th Cir.1990). That case then settled, producing a common fund of $140 million for the people of the western states.
 
 
 7
 Dunne had continued working on the western states' case for several years after leaving his employment there in 1979. The attorney general retained him for six months in 1979, for $60 per hour, not to exceed 425 hours ($25,500):
 
 
 8
 In consideration of the performance of these services, the Department will pay you the rate of $60.00 per attorney hour, not to exceed four hundred twenty-five (425) hours during the term of this contract, and not to exceed two hundred fifty-five (255) hours for the first three (3) months of the contract.... Moneys paid under other terms of this contract will be deemed to be total payment for all services and expenses.... The Department will make available reasonable paralegal/investigative services at no cost to you.... You will not enter into any subcontracts for any work or services scheduled under this contract without obtaining prior written approval from the Department, and will not be compensated for work or services performed under the contract from any other department of the State of Oregon.
 
 
 9
 Dunne's retainer was extended several times, but his hourly rate was eventually cut to $40.
 
 
 10
 The relationship was not entirely happy. Dunne's payment approvals included such remarks as "begrudgingly approved to Contract limit of $6,000" and regarding an air fare reimbursement request, "query this, Dunne drove up, he didn't fly." In 1981, a new Attorney General took office and terminated Dunne's contract. The new Attorney General claimed that "there was nothing to substantiate that he was making a substantive contribution ... that was not already being made by the Department's career professionals." He also said that Dunne's bills "struck me as extraordinarily excessive. I recall in one instance it appeared he billed all or nearly 24 hours in a calendar day."
 
 
 11
 There was no evidence that Dunne's work on the Oregon and Florida cases precluded other employment. The magistrate judge found that "Dunne failed the California Bar Examination and spent a considerable amount of time studying for the examination during the MDL litigation." Dunne's law office was in California, and the magistrate found that he was not admitted to the California bar during most of the time the litigation was going on, so the opportunities lost on account of the time he devoted to the Florida and western states litigation were necessarily limited.
 
 
 12
 This case involves claims for attorneys' fees by Dunne in both cases, the Florida case and the western states case. After the settlements, Dunne made quantum meruit claims against the common funds in both cases. In the western states case, Oregon sought to hold him to his contract and prevailed. The district court awarded Dunne no fees whatsoever from the western states common fund, and Dunne appeals.
 
 
 13
 In the Florida case, Dunne waived his right to a contingent fee and sought quantum meruit from the common fund instead. Florida did not contest his right to that remedy, just the amount. The district court awarded him $1,950,000 in attorney's fees and expenses, subject to a deduction of $841,480 he had already been paid on an hourly basis. The Florida Attorney General's office also sought fees from the common fund. We vacated Dunne's award, because the district court had not yet adjudicated Florida's award, and consideration of the share of the common fund left to the people of Florida after attorneys' fees was essential to determining the reasonableness of Dunne's award. State of Florida v. Dunne, 915 F.2d 542 (9th Cir.1990) (Dunne I ).
 
 
 14
 On remand of the Florida fee award, Magistrate Judge Venetta S. Tassopulos did an extremely careful review of all the records and recommended that the district judge award Dunne $2,104,333 and Florida $509,311 in fees. She determined that the accumulated principal and interest of the Florida common fund was by then $10,548,152.20, so the combined fees amounted to slightly less than 25% of the common fund. She found that Dunne reasonably worked 10,931.6 hours that benefitted the class, and that his reasonable rates were $200 per hour for most of his hours and $100 for hours spent in "low productivity work" such as document review and travel. For the most part, the district judge adopted the magistrate's recommendations. After crediting the $40 per hour paid under the contract and a previous award of interim fees, the district court ordered that the common fund pay Dunne an additional $43,946.24 in fees, pay Florida $1,500,992.99 total in fees and costs, and that the fund reimburse Florida for the $863,944.15, without interest, which Florida previously paid Dunne. Dunne appeals and the State of Florida cross-appeals.
 
 ANALYSIS
 
 15
 A. Dunne's claims--Florida case.
 
 
 16
 The State of Florida has not attempted to hold Dunne to his contract or disputed his claim of entitlement to a quantum meruit fee from the common fund. A 15% contingent fee contract applied to the common fund of $5,120,000 would have yielded a fee of $768,000, less than the $40 per hour compensation Dunne had already received. Because Florida has not put Dunne's right to a quantum meruit recovery at issue, we assume without deciding that he is entitled to it.
 
 
 17
 1. The 25% cap.
 
 
 18
 Dunne argues that the district court should have chosen between the "lodestar" method of multiplying reasonable hours times an hourly compensation rate or the percentage of the fund method, but erred in using both, with the percentage of the fund as a cap on the lodestar amount. He argues that the magistrate judge considered his claims of hours spent in light of the relationship between the product of hours times rate and 25% of the common fund. The district court, not the magistrate judge, made the award, but the district judge's order indicates that he adopted the magistrate judge's determination rather than substituting a different analysis of his own.
 
 
 19
 When Dunne's earlier fee award was appealed, we vacated and remanded because the district court had not considered the burden to the common fund of the other pending fee applications. State of Florida v. Dunne, 915 F.2d 542, 546 (9th Cir.1990). "The fact that seventy-two percent of the common fund could be distributed in attorney's fees and costs in this case is disturbing." Id.
 
 
 20
 In common fund cases, fees are "based on the equitable notion that those who have benefitted from litigation should share in its costs." Id. at 545. That means that the people who benefit from the money the lawyers' efforts brought in should share the burden of paying the lawyers. Thus, the people of Florida should pay Dunne and the other lawyers a reasonable amount for enriching them by $5,120,000.
 
 
 21
 We have said that common fund fees commonly range from 20% to 30% of the fund created, and that "the district court should take note that 25 percent has been a proper benchmark figure." Paul, Johnson, Alston & Hunt v. Graulty, 886 F.2d 268, 270 (9th Cir.1989); cf. In re Pacific Enterprises Securities Litigation, 47 F.3d 373, 379 (9th Cir.1995). The district court has discretion to use the lodestar method or the percentage of the fund method in common fund cases. In re Washington Pub. Power Supply Sys. Sec. Litig., 19 F.3d 1291, 1295 (9th Cir.1994). Reasonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion. See id. at 1294-95 n. 2. A 25% benchmark might be reasonable in some cases, but arbitrary if the fund were extremely large. Id. at 1297.
 
 
 22
 It is not entirely clear from the record whether the magistrate judge looked for possible cuts to his claim to bring the total fees and costs charged to the common fund below the 25% benchmark, or whether she would have made the same cuts to Dunne's charges regardless. We assume for purposes of discussion that she did, as Dunne suggests, look for cuts to make on his bill in order to stay within the benchmark. Assuming she did, she did not abuse her discretion to Dunne's detriment.
 
 
 23
 It is reasonable for the district court to compare the lodestar fee, or sum of lodestar fees, to the 25% benchmark, as one measure of the reasonableness of the attorneys' hours and rates. This resembles what lawyers commonly do when they draft a bill based on hours spent, consider the bottom line as compared with the value of the result, then cut the bill if the total seems excessive as compared with the results obtained. The district court should evaluate whether "the combined effect of granting the fee applications in toto would be to reduce substantially the size of the common fund available for distribution to the plaintiff class." Dunne I, 915 F.2d at 546. The plaintiff class should ordinarily receive 75% of the wealth the attorneys brought them, according to the 25% "proper benchmark," Paul, Johnson, 886 F.2d at 270, at least where the size of the common fund does not make that benchmark arbitrary, Washington Pub. Power, 19 F.3d at 1297. If the lodestar amount overcompensates the attorneys according to the 25% benchmark standard, then a second look to evaluate the reasonableness of the hours worked and rates claimed is appropriate.
 
 
 24
 2. Benefit to class of particular hours.
 
 
 25
 Dunne argues that he was entitled to compensation for every hour that he spent, and a prudent lawyer would have spent, on the client's case, under Twin City Sportservice v. Charles O. Finley & Co., 676 F.2d 1291, 1313 (9th Cir.1982) (a fee shifting case, not a common fund case). He claims that the magistrate judge erroneously limited his recovery to those hours for which he could show a connection between his work and benefit to the class.
 
 
 26
 The magistrate judge disallowed 2,149 of the 3,149 hours Dunne claimed to have spent preparing summary judgment materials and preparing for oral argument. Her detailed findings establish that Dunne wrote little for the summary judgments, and what little he wrote was of low quality and was entirely rewritten by others. He did not argue the motions orally. Instead, the evidence showed that Dunne was "in an advisory role."
 
 
 27
 The magistrate also disallowed 3241.5 of 3,741.5 hours Dunne claimed to have worked after November 1985, when the western states summary judgment motions were argued. Dunne had no time sheets to establish that he really spent time on the case; his quarterly reports to Florida did not refer to any ongoing projects; and the reports of another lawyer, to whose work Dunne claimed to have contributed, did not corroborate Dunne's claim. The magistrate judge likewise disallowed other, smaller amounts of time because she was not satisfied that Dunne had performed work on the Florida case in those amounts, his work had been minimal and of no value, or he had conceded that it had been billed to Oregon and was not properly billable to Florida. All these disallowances were within the magistrate's discretion.
 
 
 28
 An attorney's right to common fund fees arises from equitable principles of restitution. See Sprague v. Ticonic Nat'l Bank, 307 U.S. 161, 167, 59 S.Ct. 777, 780, 83 L.Ed. 1184 (1939); Central Railroad & Banking Co. of Georgia v. Pettus, 113 U.S. 116, 5 S.Ct. 387, 28 L.Ed. 915 (1885); Trustees v. Greenough, 105 U.S. 527, 532, 26 L.Ed. 1157 (1881); John P. Dawson, Lawyers and Involuntary Clients in Public Interest Litigation, 88 Harv.L.Rev. 849 (1975); John P. Dawson, Lawyers and Involuntary Clients: Attorney Fees from Funds, 87 Harv.L.Rev. 1597 (1974). "It is well-established that an award of attorneys' fees from a common fund depends on whether the attorneys' specific services benefitted the fund--whether they tended to create, increase, protect or preserve the fund." Class Plaintiffs v. Jaffe & Schlesinger, P.A., 19 F.3d 1306, 1308 (9th Cir.1994) (internal quotations deleted). This is not to say that if a lawyer writes a well-founded motion that a prudent lawyer would have written but it is denied, or takes a deposition of a witness who turns out not to be helpful, that the beneficiaries of the common fund need not pay for the effort. Good legal representation regularly includes some work which does not bear fruit. Nevertheless, a lawyer is not entitled to be compensated from a common fund for work he did not do or hours he did not spend. Nor is he entitled to compensation for hours a reasonable lawyer would not have spent, hours unreasonably spent, or work done so badly it is of no value to the common fund beneficiaries. The disallowances by the magistrate fell within those categories.
 
 
 29
 In a common fund case, the judge must look out for the interests of the beneficiaries, to make sure that they obtain sufficient financial benefit after the lawyers are paid. Their interests are not represented in the fee award proceedings by the lawyers seeking fees from the common fund. See Washington Pub. Power, 19 F.3d at 1300-01. Nor did they hire those lawyers and choose to repose their trust in them and accept their hourly rates and times claimed. The district court acted properly to discharge its duty to the beneficiaries of the Florida common fund by its careful analysis of Dunne's claim and disallowances of unreasonable hours claimed.
 
 
 30
 3. Delay and risk.
 
 
 31
 Dunne argues that the magistrate judge should have used a higher hourly rate, given him a bigger increment for delay in payment, and applied a multiplier for risk and preclusion of other work. He argues that lawyers specializing in antitrust work in the Los Angeles area earn $300 per hour or more, yet to compute Dunne's fees, the magistrate judge used $175 per hour, increased to $200 because of delay in payment. Dunne goes so far as to claim he is entitled to more than $800 per hour based on what antitrust lawyers charge and how long he has waited for payment.
 
 
 32
 The magistrate found that "there is no evidence that the work for Florida precluded Dunne from developing a substantial practice," and Dunne offers no reason why this finding might be clearly erroneous. Dunne had failed the California bar examination and could not have legally engaged in a general practice of law during most of this litigation. He worked on another antitrust case, and does not argue that there were any other cases he could legally have worked on but for the Florida case.
 
 
 33
 As for delay, Dunne's own historic rate had been $40 to $60 per hour. The magistrate based her $200 rate on an adjustment for delay as follows. Dunne argued to her at an earlier stage of the case that he had previously been awarded a $150 rate, which should be adjusted to $175 for inflation. The evidence was that a handful of the most highly compensated lawyers in the field might be getting $350 per hour, but the leading lawyers who had submitted affidavits showed hourly rates of $200 to $250. She credited evidence presented by Florida that Dunne's work was "of exceptionally poor quality," which could not be compared to the work of the lawyers charging $200 per hour or more. She considered these and other factors to enhance what she termed his "historic rate" of $175 by $25 to cover delay in payment.
 
 
 34
 The district court must assure that attorneys in common fund cases are compensated for delay in payment, and the court has discretion to do so either "(1) by applying the attorneys' current rates to all hours billed during the course of the litigation; or (2) by using the attorneys' historical rates and adding a prime rate enhancement." Washington Pub. Power, 19 F.3d at 1305. The magistrate judge did not follow either course exactly. She did not use a current rate Dunne was charging voluntary clients, but Dunne has not argued she should have, or directed our attention to evidence of what that rate might be. Nor did the magistrate enhance his $40 to $60 hourly rate by a prime rate enhancement. Dunne has not shown how either of the Washington Pub. Power methods would have yielded, as applied to evidence in the record, a higher rate than the $200 the magistrate judge used. It appears that either method would probably have yielded a lower rate, so any error was harmless to Dunne. The $200 rate the magistrate judge used was a current rate for other attorneys whose work, she concluded, had a higher market value than Dunne's, so use of that current figure did not prejudice Dunne's entitlement to compensation for delay.
 
 
 35
 The district judge must exercise discretion in deciding whether to award a risk multiplier. It may be an abuse of discretion to deny one, where the hourly rate does not reflect risk of nonpayment, willingness to represent the class assumes a risk multiplier will be applied, and there is no guarantee of payment. Washington Pub. Power, 19 F.3d at 1302. The magistrate judge decided against a risk multiplier largely because Dunne had no risk whatsoever of nonpayment; he had already been paid $863,944.15 for eight years work on the Florida case:
 
 
 36
 Because of his contract with Florida, Dunne was guaranteed $40 per hour, and as indicated, Dunne received a total payment of $863,944.15 pursuant to that contract.
 
 
 37
 ... Dunne received payment for the entire number of his 21,068.6 hours. The Magistrate Judge found for purposes of this litigation the hours worked were 17,552.70 taking into account double billing and other obviously excessive hours billed.
 
 
 38
 The absence of risk of nonpayment is obviously a good reason to deny a multiplier for risk of nonpayment.
 
 
 39
 4. Credit for payments made.
 
 
 40
 Dunne argues that the magistrate judge erred by subtracting the $863,944.15 he had already received under his $40 per hour contract from the amount the common fund had to pay him. He has two theories, though no authorities.
 
 
 41
 First, Dunne says that the Florida Attorney General's office paid him the $863,944.15, so the money should be treated as part of Florida's fee petition as an expense borne by Florida, but the common fund should not get credit for it. Because the Attorney General's office was paying the people's money to Dunne for his work on behalf of the benefitted class, the magistrate reasonably exercised her discretion to credit this advance to Dunne on the class's behalf against what the common fund owed.
 
 
 42
 Dunne's second argument is that because the magistrate found that only 10,931.6 of his hours benefitted the class, and he had been paid $40 per hour for 21,068.6 hours, the common fund should only get credit for $40 per hour times 10,931.6 hours. The word "chutzpah"[1] leaps to mind. What the magistrate judge did was to credit the fund for what the people of Florida had already paid Dunne, whether he had overcharged them or not. He wants to be able to keep the money he charged inappropriately, without giving them credit for it. The magistrate reasonably exercised her discretion to credit the beneficiaries of the common fund with the full amount of their interim payments for Dunne's services, whether he had overcharged them or not.
 
 
 43
 5. Specific reductions.
 
 
 44
 Dunne challenges several of the magistrate's reductions in hours for which the Florida common fund was charged. In particular, the magistrate subtracted hours for which Dunne charged Oregon under his contract. Where a lawyer working for one client produces a fund benefitting one not his client, the non-client may be obligated to pay for the benefit conferred, even though the lawyer was paid by his client. 2 George E. Palmer, The Law of Restitution 431 (1978); see also Greenough, 105 U.S. at 532; Paul, Johnson, 886 F.2d at 271. The common beneficiaries would be unjustly enriched if they enjoyed the entire benefit produced by the work, and the client unjustly impoverished if it bore the entire burden of the expense of producing the fund. In this case, however, it was not an abuse of discretion to treat Dunne as fully compensated, where his work for Oregon was fully compensated by the people of Oregon pursuant to Dunne's contract, and his benefit to Florida was amply compensated.
 
 
 45
 Dunne's remaining specific reduction disputes are not supported by challenges to particular findings or legal errors.
 
 
 46
 6. Time spent obtaining the fee.
 
 
 47
 Dunne has spent considerable time obtaining his fees. This court alone has now heard his lawyer's fee issue twice, in Florida v. Dunne, 915 F.2d 542 (9th Cir.1990), and in the case at bar. Of course much more time and effort was spent in the district court in the extensive proceedings before the magistrate. Dunne appeals denial of compensation for this time.
 
 
 48
 "Time spent obtaining an attorneys' fee in common fund cases is not compensable because it does not benefit the plaintiff class." Washington Pub. Power, 19 F.3d at 1299. Dunne argues for an exception, because his case is "extraordinary," and the money will go to Florida and its counties rather than individual class members. These are not reasons justifying an exception. The reason for the rule applies. Dunne's work on his fee applications did not benefit the class. Indeed, Florida points out that Dunne originally demanded $3.6 million for getting the people of Florida $5.2 million (70% of the fund), then increased his demand to $7.3 million when the fund had grown by accumulation of interest, so it is Florida's opposition rather than Dunne's application which benefitted the common fund.
 
 
 49
 B. Florida's claims.
 
 
 50
 The State of Florida, to whom the district court also awarded attorney's fees from the common fund, cross-appeals certain aspects of the award.
 
 
 51
 1. Interest on the $863,944.15.
 
 
 52
 Florida argues that the district court erred in not requiring Dunne or the common fund to pay interest on the $863,944.15 Florida paid Dunne pursuant to the $40 per hour clause in their contract. The magistrate did not abuse her discretion in denying Florida's request for interest from Dunne on this money. First he did the legal work, then Florida paid him the $40 per hour they had agreed upon. The money was not an advance for future services. Though Dunne's compensation award from the common fund was larger, the magistrate took account of the $863,944.15 when she considered the issues of a risk multiplier, and the common fund benefitted from the advance on that issue.
 
 
 53
 The issue is different with respect to Florida's award from the common fund. Florida contributed legal services, for which it obtained an attorneys' fees and expenses award from the common fund. One of its expenses was the $863,944.15 it had paid Dunne years before. Florida, like Dunne, was entitled to compensation for delay. He received compensation for delay by using an adjusted rate for antitrust attorneys plus a delay enhancement. That would not work on an expense item, so the alternative means of compensating attorneys for delay, adding an interest enhancement, Washington Pub. Power, 19 F.3d at 1305, is appropriate.
 
 
 54
 We remand for an adjustment to compensate Florida for the delay in reimbursement of the $863,944.15 expense it paid years before. Because the total of Dunne's award and Florida's award were already less than a percentage point short of the benchmark, compensation for delay may, in the exercise of discretion, require a second look by the district court at Dunne's fees and expenses, Florida's, or both. This may have the practical effect of shifting a considerable sum from Dunne to Florida, even though we have said that he does not owe interest directly on money he was paid after he earned it. But the reason would be different: that his fee was too high relative to the benefit he conferred as compared with what Florida conferred, rather than that he owes interest on his own earnings. It would not be an abuse of discretion to cut Dunne's or the Florida Attorney General's fee in order to stay within the 25% benchmark after having compensated Florida for the delay in receiving reimbursement of its $863,944.15 expense.
 
 
 55
 2. Florida's cross appeal on Dunne's hours.
 
 
 56
 Florida also challenges 3,911 hours ($782,200) of Dunne's award on the ground that the hours were not worked at all, or if they were, they provided no benefit to the class. The largest part of this dispute appears to be for time Dunne claimed to have spent on motions never briefed, filed or argued, on which he either wrote nothing, or everything he wrote was rewritten by someone else. Dunne had no timesheets substantiating this time. Florida makes good arguments to justify its claim that Dunne should not have been compensated at all for this time, but the magistrate considered these arguments, and they were much of the reason why his claim for 21,068.6 hours led to an award for only 10,931.6 hours. While the magistrate judge appears to have been generous in her allowances of hours to Dunne, we cannot say that the district court abused its discretion.
 
 
 57
 3. Florida's cross appeal on its expert fees.
 
 
 58
 Florida challenges the magistrate judge's disallowance of one fourth of the $380,379.58 Florida paid to a consultant. The magistrate judge noted that Dunne had agreed that the consultant should be hired and approved the bill, but she disallowed 25% of the total because the district court had precluded discovery on the damages issue to which the consultant spoke. While a party might well have an interest in consulting about the facts despite some sort of preclusion of direct use, we do not conclude that the magistrate judge abused her discretion in ruling otherwise in the facts of this case.
 
 
 59
 In our determinations that the magistrate judge did not abuse her discretion on the issues of Florida's cross appeal, we do not intimate that her discretion had to be exercised as it was. If on consideration of the interest on the $863,944.15, the magistrate determines that a second look at these matters is appropriate in order to keep awards within the benchmark 25%, on the record before us the district court would be free to exercise its discretion the other way.
 
 
 60
 C. The Oregon case.
 
 
 61
 Dunne was paid for his work for Oregon, first by salary as an assistant attorney general, and subsequently pursuant to contract, at hourly rates of $60, then $40, to which he agreed. He seeks an additional award from the western states common fund created by the litigation. Unlike Florida, Oregon did not agree that Dunne was entitled to a common fund quantum meruit award. Instead, it sought to hold Dunne to his contract and succeeded. He was awarded nothing at all from the common fund, and he appeals.
 
 
 62
 The district court adopted the report of its special master regarding Dunne's claim. The court concluded that an award based on Dunne's contribution to Oregon's portion of the common fund would not exceed what he had already received:
 
 
 63
 Dunne was for a time a member of the Office of the Attorney General of Oregon, and later a contract attorney for Oregon, working on early stages of the refined petroleum products litigation; for those efforts he received compensation from Oregon. Thereafter, he undertook work for the State of Florida in that state's piece of MDL-150 and was paid something for that work.
 
 
 64
 Upon settlement of the Florida case, the court awarded to Dunne a lodestar-based fee of $2,104,333 from Florida's $9,000,000 plus settlement. He now claims entitlement to an additional fee of more than $4,000,000 on the basis of alleged further and uncompensated contributions to the overall litigation effort. It is determined that an accomplishment-based award to Dunne, consistent with the approach adopted in this report for other counsel, for his contribution to the whole MDL-150 effort, (i.e., Florida and the Western states combined), would not exceed what he has already received from the State of Oregon, the State of Florida, and the fee award in connection with the Florida settlement. Dunne has not presented persuasive evidence that any uncompensated activity on his part contributed to the settlements now under discussion. He is entitled to no additional award in the current fee proceeding.
 
 
 65
 Oregon argues that Dunne's claim is moot, because awards have been made to other attorneys from the common fund based on the cumulative impact of all the awards, and Dunne did not challenge the other awards. "Generally, an appeal will be dismissed as moot when events occur which prevent the appellate court from granting any effective relief even if the dispute is decided in favor of the appellant." Holloway v. United States, 789 F.2d 1372, 1373 (9th Cir.1986). The record before us does not show that the entire common fund has been distributed, or that other awards could not be reconsidered, so Dunne's appeal is not moot.
 
 
 66
 There are three periods of time at issue. During the first, Dunne was an employee of the State of Oregon in the Attorney General's office. During the second, he was in private practice, and provided legal services to the State of Oregon pursuant to a series of written contracts. During the third, he had been fired as contract counsel for Oregon, but was working on the Florida case pursuant to his contract with the Attorney General of Florida.
 
 
 67
 Dunne says in his brief that his fee petition makes no claim for the hours he worked while employed by Oregon as an assistant attorney general. But he argues that he should be compensated from the common fund for his discovery contribution regarding a critical witness, Kenneth Galligan. We characterized Galligan's testimony as "the most significant evidence" of a relevant fact that led us to overturn summary judgment against the western states. In re Coordinated Pretrial Proceedings, 906 F.2d at 456. Dunne is right about the financial benefit to the western states of Galligan's testimony.
 
 
 68
 But Galligan was found by investigators working for the Oregon Attorney General's Office and the California Attorney General's Office. All of Dunne's work with and regarding Galligan was performed as an Assistant Attorney General of the State of Oregon. Thus Dunne really is claiming quantum meruit compensation from the common fund for work he did while a full-time employee of the State of Oregon.
 
 
 69
 Dunne cites no authority for the novel proposition that an employee is entitled to more than his agreed upon rate of pay if the work he does for his employer is of especially great value. Nor have we found any. The general rule is the opposite, that when a person makes a contract with eyes open to be paid a certain amount for his services, that is all he gets:
 
 
 70
 A person of full capacity who, pursuant to a contract with another, has performed services or transferred property to the other or otherwise has conferred a benefit upon him, is not entitled to compensation therefor other than in accordance with the terms of such bargain, unless the transaction is rescinded for fraud, mistake, duress, undue influence or illegality, or unless the other has failed to perform his part of the bargain.
 
 
 71
 Restatement of Restitution § 107(1) (1937); see also § 212. Dunne offers no reason, except the allegedly great value of his work, why this general rule would not limit his compensation to his salary for the work he did while an employee.
 
 
 72
 For the second period, when he was an independent contractor, Dunne makes two arguments, first that his work should be compensated under the same principles as governed awards to the attorneys who received millions of dollars from the western states common fund, and second, that he was not paid for part of his work. As to the first argument, it is governed by the same principle as his claim for a quantum meruit award for the work he did finding and talking to Kenneth Galligan while he was an assistant attorney general. Dunne contracted with his eyes open for an hourly rate. He had no equitable entitlement to more.
 
 
 73
 The second argument, that Dunne was not paid for part of his work, apparently refers to 59.5 hours and $417.51 in expenses in excess of his contractual limit. Dunne's contracts limited the hours and expenses for which he would be compensated to maximum amounts per month. For example, here is typical language in one of them regarding his monthly limit on hours:
 
 
 74
 In consideration of the performance of these services, the Department will pay you the rate of $60.00 per attorney hour, not to exceed four hundred twenty-five (425) hours during the term of this contract, and not to exceed two hundred fifty-five (255) hours for the first three (3) months of the contract.... Moneys paid under other terms of this contract will be deemed to be total payment for all services and expenses.
 
 
 75
 Dunne offers no authority for the proposition that the contractual limit would not operate against his claim, and we have found none. The "not to exceed 425 hours" and "will be deemed to be total payment" clauses mean that Dunne agreed, with his eyes open, that this is all he would get, even if he worked more hours or spent more money in connection with the lawsuit, during the period of time controlled by the contract.
 
 
 76
 During the final period, Dunne had been fired by Oregon, but was still working for Florida. Dunne argues that the western states common fund should compensate him for the benefit his work for Florida conferred on Oregon after Oregon fired him. The Florida and Oregon cases were related, so a lawyer serving Florida might well advance the interests of the Oregon common fund. As we have explained above, sometimes a lawyer working for one client who produces a fund benefitting a third party is entitled to compensation from that fund, in addition to his contractual compensation from his client. 2 George E. Palmer, the Law of Restitution 431 (1978); see also Greenough, 105 U.S. at 532; Paul, Johnson, 886 F.2d at 271.
 
 
 77
 We are satisfied, though, that in this case, the district court did not abuse its discretion in deciding that Oregon had already sufficiently compensated Dunne for the benefits he conferred upon the Oregon portion of the common fund. There are three reasons why. First, during the periods of his employment and his independent contract, he was fully compensated in the amounts he agreed upon.
 
 
 78
 Second, he was fired. Oregon did not stand with its arms folded and enjoy the benefit of Dunne's work, and then object only when it came time to pay for it. Oregon could not stop Florida from using Dunne's legal services, but it did all it could to cease using them itself. One who officiously confers a benefit upon another is generally not entitled to compensation for it. Restatement of Restitution § 2 (1937). Dunne has cited no authority to the contrary. There are exceptions, as when one party to a multiparty case objects to hiring the lawyer, but not to taking the money the lawyer obtains. Felton v. Finley, 69 Idaho 381, 209 P.2d 899 (1949). But the Felton exception has no application where the benefits conferred by the claimant lawyer are uncertain, and other lawyers, including those retained by the party which refused the claimant lawyer's services, were largely or entirely responsible for conferring the benefit. See John P. Dawson, Lawyer and Involuntary Clients: Attorney Fees From Funds, 87 Harv.L.Rev. 1597, 1644-47 (1974).
 
 
 79
 Third, the district court, in the exercise of its discretion, took account of the extent to which Dunne conferred value on the Oregon beneficiaries, and the extent of his compensation, and decided it was adequate. The record supports the district court's exercise of discretion. A Washington Assistant Attorney General on the case swore in an affidavit that Dunne was "a liability," "lacked basic trial skills," and "seemed interested in promoting his own interests at the expense of the interests of the plaintiffs and tried to drive wedges between the states." Regarding the critical Kenneth Galligan deposition, he swore that Dunne "claimed to be too busy to attend the defendants' cross-examination." Other evidence was consistent with these remarks. The district court could reasonably exercise its discretion to conclude that although the common fund was large, Dunne's contribution to it was small and had been fully compensated.
 
 
 80
 Dunne's argument suggests that (1) he billed for 21,068.6 hours, and his Florida award was only 10,931.6 hours; (2) someone ought to pay him for the 10,137 hours; (3) if not Florida, then Oregon. But his conclusion does not follow. He is entitled to a fair fee from Florida, and nothing beyond his contract from Oregon, whether he spent more time on the case or not.
 
 
 81
 Dunne also argues that the special master did not spend enough time on his submissions. If he had, Dunne argues, he would have discovered the uncompensated hours and understood the value to Oregon of Dunne's work for Florida. We see neither prejudice, for the reasons stated above, nor error.
 
 CONCLUSION
 
 82
 We affirm, as to Dunne's appeals of the Florida and Oregon cases. We reverse, as to Florida's cross appeal, and remand for proceedings consistent with this opinion.
 
 
 
 *
 Pursuant to Federal Rule of Appellate Procedure 43(c), Robert Butterworth is hereby substituted for Robert L. Shevin, former Attorney General of the State of Florida
 
 
 **
 The Honorable Charles A. Legge, United States District Judge for the Northern District of California, sitting by designation
 
 
 [1]
 Effrontery. The classic definition is the man who kills both his parents, and then asks the court for mercy because he is an orphan. Leo Rosten, The Joys of Yiddish 94 (1968)